# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JUSTIN BENNETT, | ) |
|         Petitioner, | ) |
| vs. | )   Case No.   14-1130-CV-W-ODS-P |
| JAY CASSADY, | ) |
|         Respondent. | ) |

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, a convicted state prisoner currently confined at the Jefferson City Correctional Center in Jefferson City, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2010 convictions of first-degree murder and armed criminal action which were entered in Jackson County, Missouri. Petitioner filed a direct appeal of his conviction and sentence and a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15, which were both denied. Resp. Ex. E; Resp. Ex. I.

Petitioner asserts twenty-three (23) grounds for relief. Respondent contends that Grounds 1, 3, and 5-23 are procedurally defaulted and, alternatively, without merit, and that Grounds 2 and 4 are without merit.

In Ground 1, petitioner contends that the trial court erred in granting the State's strike of Venireperson 12 for cause because the strike was racially motivated and thus unconstitutional. Petitioner next contends that the trial court erred in granting the State's peremptory strike of Venireperson 40 (Ground 2) and Venireperson 49 (Ground 3) because the strikes were racially motivated and thus unconstitutional.

In Ground 4, petitioner contends that his trial counsel was ineffective for (a) failing to

impeach witness Crystal Ragsdale; (b) failing to object to Ragsdale's testimony; (c) failing to present evidence of witness Shanice Gates's communication with petitioner; (d) failing to impeach Gates with prior inconsistent statements; and (e) failing to object to "commentary by detectives during petitioner's interrogation."  In Grounds 5, 8, 9, and 18, petitioner contends that his trial counsel was ineffective for failing to present certain evidence at trial.  In Grounds 6, 20, and 22, petitioner contends that his trial counsel was ineffective for (Ground 6) failing to object to the presence of law enforcement in the court room; (Ground 20) failing to object to the prosecutor's reference to Johnson's death as a "murder" or "homicide;" and (Ground 22) failing to file a motion to suppress statements made to police.  In Grounds 7, 10, 16, 17, and 19, petitioner contends that his trial counsel was ineffective for (Ground 7) failing to request specific jury instructions; (Ground 10) failing to make a sufficient record of a "matter not in evidence"; (Ground 16) failing to request a competency evaluation based on petitioner's claim that he could not remember stabbing Johnson; (Ground 17) abandoning other possible defense theories in favor of self-defense; and (Ground 19) failing to advise petitioner of his right not to testify at trial.

In Grounds 11, 12, 13, 14, 15, 16, and 23, petitioner contends that his direct appeal counsel was ineffective for failing to raise claims that the trial court erred in: (Ground 11) excluding evidence that the victim had assaulted petitioner's girlfriends in the past; (Ground 12) excluding evidence of past violent acts by the victim; (Ground 13) excluding petitioner's testimony that the victim had once asked petitioner to rob a man; (Ground 14) overruling petitioner's objection to the introduction of the videotaped interrogation of petitioner by police at trial; (Ground 15) denying trial counsel's request to make an "ex parte record concerning a matter not in evidence"; (Ground 16) excluding evidence that the victim had left petitioner threatening voicemails and texts; and

2

(Ground 23) allowing the State to present evidence obtained as a result of law enforcement "pinging" his cellular phone without a warrant.

## FACTUAL BACKGROUND

On September 27, 2008, petitioner entered the home of Keona Johnson, the mother of his four-month-old son, and stabbed Johnson 106 times. Resp. Ex. E, p. 3. Johnson died as a result of her injuries. *Id.* At trial, petitioner admitted that he killed Johnson but claimed that he did so in self-defense. *Id.* On November 18, 2009, following trial, a Jackson County jury found petitioner guilty of first-degree murder and armed criminal action. Resp. Ex. D, pp. 186-88. The Missouri Court of Appeals, Western District, affirmed petitioner's convictions on appeal. *State v. Bennett*, 354 S.W.3d 247 (Mo. Ct. App. 2011).

Petitioner filed a timely Rule 29.15 motion for post-conviction relief. Resp. Ex. F. Following an evidentiary hearing, the circuit court denied petitioner's motion for post-conviction relief. *Id*; Resp. Ex. I. On appeal, the Missouri Court of Appeals, Western District, affirmed the motion court's denial of Rule 29.15 relief. *Bennett v. State*, 450 S.W.3d 479 (Mo. Ct. App. 2014).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **PROCEDURAL DEFAULT**

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before presenting those issues in an application for habeas relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." *Sloan* 54 F.3d at 1381.

In Grounds 1 and 3, petitioner contends that the strikes of Venireperson 12 and Venireperson 49 were unconstitutional based on *Batson v. Kentucky*, 476 U.S. 79 (1986). Petitioner did not, however, raise his claims regarding the strikes of Venirepersons 12 or 49 in his motion for a new trial as required to preserve it for appellate review. Further, petitioner did not raise Grounds 5-23 in the direct appeal of his convictions and sentences or in his Rule 29.15 motion for post-conviction relief. As such, Ground 1, 3, and 5-23 are procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri Courts at any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied*, 523 U.S. 1010 (1998).

A federal court may not review procedurally defaulted claims "unless the prisoner can

4

demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner alleges ineffective assistance of post-conviction counsel to excuse his procedural default under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the United States Supreme Court recognized that ineffective assistance of post-conviction motion counsel could qualify as cause excusing the failure to raise a claim in the post-conviction motion. *Id*. at 1319-21

To demonstrate cause under *Martinez*, a petitioner must show that post-conviction counsel was ineffective in failing to raise a substantial claim of ineffective assistance by trial or plea counsel. *Id.* at 1318-19. "In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation." *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000)). "Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom." *Evans*, 371 F.3d at 445 (citing *Strickland*, 466 U.S. at 687).

Petitioner fails to demonstrate that post-conviction counsel was constitutionally ineffective as required for a finding of cause excusing his default. In assessing petitioner's claim that post-conviction counsel's performance was deficient, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To overcome this presumption, petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.

5

Here, apart from the assertion that his procedural default should be excused under *Martinez*, petitioner provides no facts to support his claim that his post-conviction counsel was ineffective. In addition to his failure to provide any factual support for his claim, citations in the amended Rule 29.15 motion make it clear that post-conviction counsel was familiar with the record**.** Resp. Ex. F, p. 48. Post-conviction counsel's familiarity with the record, including the evidence presented at trial and the relevant legal issues indicate that the decision to raise certain issues in the amended 29.15 motion and omit others was a reasonable exercise of professional judgment. In light of the presumption that post-conviction counsel acted reasonably and the lack of any specific facts demonstrating deficient performance in the petition, petitioner fails to show that post-conviction counsel provided ineffective assistance with respect to any of his procedurally defaulted claims as required to excuse his procedural default under *Martinez*.

Even if petitioner could show ineffective assistance of post-conviction counsel, however, his procedurally defaulted claims nevertheless fail because petitioner's underlying claims do not allege "substantial" claims of ineffective assistance of trial counsel as required under the second prong of *Martinez*. As such, Grounds 1, 3, and 5-23 will be denied.

## GROUND 2

In Ground 2, petitioner contends that the trial court erred in granting the State's peremptory strike of Venireperson 40 because the strike was racially motivated in violation of *Batson*. The Missouri Court of Appeals, Western District evaluated this claim on direct appeal and found no *Batson* error:

> In his second point on appeal, [petitioner] contends that the court erred in denying his *Batson* challenge to the State's peremptory strike of Venireperson 40. [Petitioner] claims that the State did not strike similarly situated white jurors and, therefore, the State's stated justification for the strike was pretextual. When

6

reviewing a ruling on a Batson challenge, we accord the circuit court "great deference because its findings of fact largely depend on its evaluation of credibility and demeanor." *Kesler-Ferguson v. Hy-Vee, Inc.,* 271 S.W.3d 556, 558 (Mo. banc 2008). We will reverse the circuit court's decision only if it is clearly erroneous. *Id.* To find the decision is clearly erroneous, we "must have a definite and firm conviction that a mistake was made." *Id.*

Missouri has a three-step procedure for resolving a Batson challenge. *Id.* In the first step, the party challenging the strike must object and make a prima facie case of racial discrimination by identifying the protected class to which the potential juror belongs. *Id.* at 559; *State v. Bateman*, 318 S.W.3d 681, 689 (Mo. banc 2010), cert. denied, 131 S. Ct. 927 (2011). In the second step, the proponent of the strike must present a specific and clear race-neutral reason for the strike. *Id.* "The second step of this process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). The sole issue at this stage is the facial validity of the explanation. *Id.* at 768. Unless a discriminatory intent is inherent in the reason given, the circuit court should deem the reason to be neutral. *Id.*

If the proponent of the strike articulates an acceptable non-discriminatory reason for the strike, then, at the conclusion of the third step, the circuit court must decide whether the party challenging the strike "has proved purposeful racial discrimination." *Id.* at 767. To prove purposeful racial discrimination, the party challenging the strike must demonstrate that the proffered reason for the strike was merely pretextual and that the strike was, in fact, motivated by race. *Bateman*, 318 S.W.3d at 689. To meet this standard, the party challenging the strike "must present evidence or specific analysis" showing that the proffered reason was pretextual. *State v. Johnson*, 930 S.W.2d 456, 460 (Mo. App. 1996). The party "cannot simply rely on conclusory allegations that the real motivation for the strike was racial in nature." *Id.* Factors that may be relevant to the determination of pretext include: (1) "the presence of similarly situated white jurors who were not struck," *State v. Strong*, 142 S.W.3d 702, 712 (Mo. banc 2004) (citation omitted); (2) "the degree of logical relevance between the explanation and the case to be tried in terms of the nature of the case and the types of evidence adduced," *Kesler-Ferguson*, 271 S.W.3d at 559; (3) "the striking attorney's demeanor or statements during voir dire," *id.*; and (4) the circuit court's past experience with the striking attorney. *Id.* Because the circuit court is in a better position to observe trial counsel's sincerity and credibility and to observe the racial makeup of the jury panel, we rely on the circuit court "to consider the plausibility of the striking party's explanations in light of the totality of the facts and circumstances surrounding the case." *Id.*

Here, [petitioner] met step one of the three-step procedure when, after challenging the State's strike, the court identified Venireperson 40 as African

7

American. The State then met step two of the procedure when it offered a race-neutral justification for the strike. The State proffered that Venireperson 40 had stated that she had a nephew facing life in prison without the possibility of parole. This explanation referenced Venireperson 40's asking during voir doir to speak privately with the court.

Venireperson 40 then told the court that she had one nephew in prison and one waiting sentence of life in prison without parole. The court asked Venireperson 40 if having a relative facing the same period of imprisonment as Bennett would cause her to favor one side over the other at trial. She responded:

> I was thinking about that. And I was looking at him and thinking how young he is. And I think I would kind of have a little problem with that. I mean, with no parole. It's such an early age. And I thought if that were my nephew also. So I might have a little problem with that.

The court may strike a juror for cause if it appears he or she cannot consider the full range of punishment in a first degree murder case. *State v. Forrest*, 183 S.W.3d 218,231 (Mo. banc 2006). "[T]he justification for a peremptory strike need not rise to the level of justification for a challenge for cause." *Clark*, 280 S.W.3d at 631 (quoting *State v. Pointer*, 215 S.W.3d 303, 307 (Mo. App. 2007)). Here, the State could have arguably asked that Venireperson 40 be stricken for cause, due to her potential inability to consider the full range of punishment. Nevertheless, the State used a peremptory strike, which requires even less justification than a strike for cause. Venireperson 40's potential inability to consider the full range of punishment constituted a legitimate race-neutral basis for the State's peremptory strike.

[Petitioner] then had the step three burden of proving that the State's proffered reason for the strike was pretextual and that the State's real purpose was race-motivated. [Petitioner] offered nothing. The court directly asked [petitioner] if there were similarly situated Caucasian venirepersons. [Petitioner]'s response via his attorney: "No, Your Honor."

[Petitioner]'s motion for new trial argued that the State failed to offer a race-neutral explanation for the strike. On appeal, he now does not contest the State's race-neutral explanation but contends that the explanation was pretextual because there were similarly situated white jurors whom the State did not strike. We refuse to consider [petitioner]'s arguments, related to allegations of pretext, raised for the first time on appeal. *See Clark*, 280 S.W.3d at 631 (refusing to consider for the first time on appeal additional arguments to support a claim of pretextual peremptory reasons, asserting the existence of similarly situated white jurors who were not struck); and *State v. Johnson*, 220 S.W.3d 377, 383 (Mo. App.

2007) (refusing to consider argument that similarly situated white venirepersons were not struck by the State, where appellant did not raise that argument in either the *Batson* hearing or his motion for new trial but raised it for the first time on appeal). The circuit court's denial of [petitioner]'s *Batson* objection to the State's peremptory strike of Venireperson 40 was not clearly erroneous. Point two is denied.

Resp. Ex. E at 5-9.

Petitioner asserts that the prosecution's reasons for striking Venireperson 40 were pretextual because there were other venirepersons who were similarly situated that were not struck from the jury. The record, however, supports the Missouri Court of Appeals' determination that the trial court did not err in overruling petitioner's *Batson* objection. Where, as here, the state court makes findings of fact that the prosecutors were not racially motivated in making their strikes, those factual findings "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. 2254(e)(1); *see also Purkett v. Elem*, 514 U.S. at 769 (1995) (quoting *Marshall*, 459 U.S. at 432). This is because "evaluation of the prosecutor's state of mind based on demeanor and credibility lies particularly within a trial judge's province." *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion).

Petitioner has failed to present "clear and convincing evidence" demonstrating that the Missouri Court of Appeals' denial of petitioner's *Batson* claim resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2); Mo. Rev. Stat. § 558.021(1)(3); *Batson v.*

9

*Kentucky*, 476 U.S. at 98 (credibility determinations regarding race-neutral reasons for strikes are left for the state courts to decide). Thus, Ground 2 will be denied.

## GROUND 4

In Ground 4, petitioner claims that his trial counsel was ineffective for (a) failing to impeach witness Crystal Ragsdale; (b) failing to object to Ragsdale's testimony; (c) failing to present evidence of witness Shanice Gates's communication with petitioner; (d) failing to impeach Gates with prior inconsistent statements; and (e) failing to object to "commentary by detectives during petitioner's interrogation." Petitioner raised Ground 4 in his Rule 29.15 post-conviction motion and on appeal from the denial of that motion.

In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

10

The Missouri Court of Appeals, Western District, found that the motion court's judgment was supported by the record:

> In our appellate review, we may proceed directly to the issue of prejudice without first determining whether counsel's conduct was deficient. *Strickland*, 466 U.S. at 697. In considering the prejudice prong, it is not enough "that an error by counsel might have had some conceivable effect on the outcome" of the trial. *Vogel*, 31 S.W.3d at 136. Instead, the movant must show that there is a reasonable probability that, absent the alleged error, the results of the proceeding would have been different. *State v. White*, 798 S.W.3d 694, 697 (Mo. banc 1990). "A reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding." *Taylor v. State*, 382 S.W.3d 78, 81 (Mo. banc 2012). In determining if a "reasonable probability" exists, a motion court must consider the totality of the evidence. *Strickland*, 446 U.S. at 691-96. "In doing so, it can consider the strength of the evidence of guilt in evaluating any prejudice to a defendant as a result of counsel's alleged ineffectiveness." *Vogel*, 31 S.W.3d at 136. "Where there is overwhelming evidence of guilt, such that it cannot be reasonably said that, but for the challenged actions of trial counsel, the jury would have found the movant not guilty, the movant suffers no prejudice." *Stewart v. State*, 387 S.W.3d 424, 430 (Mo. App. S.D. 2012).
>
> . . . .
>
> Even were we to limit the evidence to that which is not challenged by [petitioner] in his post-conviction relief motion, the evidence of his guilt is overwhelming. Viewed in the light most favorable to the jury's verdict, [petitioner] was well acquainted with the victim, Keona Johnson ("Johnson"). [Petitioner] and Johnson had an on-and-off-again tumultuous relationship (and it was then "off"), and Johnson was the mother of [petitioner]'s infant son. On September 27, 2008, Johnson and her friend, Crystal Ragsdale ("Ragsdale"), had been out with their respective children, and the group eventually returned to Johnson's house. Upon their return, they noticed that it appeared as though someone had entered the house through the kitchen window. Johnson and Ragsdale searched the house but did not locate anyone, and they did not see [petitioner]'s vehicle outside. Unbeknownst to them, Bennett had parked down the street so as not to be seen, had surreptitiously entered Johnson's house, and was hiding in Johnson's bedroom.
>
> The older children went upstairs to play while Johnson and Ragsdale stayed downstairs with the baby and visited with each other. Eventually, Johnson went upstairs to her room. Shortly thereafter, the children started screaming and came running downstairs, and Ragsdale heard a door slam. Ragsdale went upstairs and heard Johnson say, "He's killing me!" She then heard [petitioner] say, "Man, I

11

told you!" Ragsdale attempted to open the bedroom door, but it was locked. She then took the four older children and fled the house, going to a nearby gas station to call police. Ragsdale left the baby in his walker in the lower level of Johnson's house.

When police arrived at Johnson's house, Johnson was dead, and the baby was missing. Johnson had been stabbed 106 times and had a human bite mark on one of her arms; the bite mark was later determined to have been caused by [petitioner]. It appeared that someone had gone out through Johnson's upstairs bedroom window. Blood, which was later determined to have come from both [petitioner] and Johnson, was found on or around the window.

Shanice Gates ("Gates"), [petitioner]'s current girlfriend, also called 911 on the night of Johnson's death. She had made plans to meet with Johnson that evening, but she became concerned when she called Johnson's phone and heard [petitioner]'s voice and Johnson screaming. Police asked Gates to come to the Independence police station for questioning; but as she was passing near Johnson's house and saw the police out front, [petitioner] coincidentally called Gates's cell phone. Gates stopped near Johnson's house and told police that [petitioner] was calling her at that very moment. Gates gave the police [petitioner]'s cell phone number and a description of his car with a partial license plate number.

Police used [petitioner]'s cell phone information to attempt to find [petitioner] and the missing infant. They eventually located [petitioner]'s car at a home in Kansas City, Missouri. Police surrounded the house at approximately 2:00 a.m. and ordered the occupants to come out. [Petitioner] and others came out of the house, and [petitioner] was immediately arrested. Although the police did not find the baby there, while they were searching for the infant, one officer smelled a strong odor of lighter fluid coming from a grill. Inside the grill, the officer found a pair of jeans or jean shorts and a white tee shirt that were damp and smelled strongly of lighter fluid; the clothes were also stained with what was later determined to be Johnson's blood. Officers also found a pair of Air Jordan athletic shoes, which were stained with what was later determined to be Johnson's blood, in the attic access in one of the upstairs bedrooms. In [petitioner]'s car, police found more of [petitioner]'s and Johnson's blood and a box for a pair of Air Jordan athletic shoes. Johnson's infant son was located by police at approximately 2:45 a.m. at [petitioner]'s mother's house.

[Petitioner] was questioned by police in a patrol car and again at the police station. [Petitioner] repeatedly denied having anything to do with Johnson's death and denied having been in her home that evening. At trial, [petitioner] claimed he was acting in self-defense. [Petitioner]'s testimony, which the jury clearly found to be completely fabricated, was summarized in the judgment by the motion court

12

in the context of the overwhelming evidence demonstrating the falsity of [petitioner]'s version of events:

> [Petitioner] testified at trial, providing an account that was diametrically opposed to what he had told the police. He said that he went to Johnson's house to pick up Justin, Jr. because Johnson told him she was going to leave him with her young daughter. He claimed he parked down the street because he did not want to block the driveway, and there were no spaces left across the street. No one was home, so he said he let himself in with a key he had and tried to watch television. The cable was shut off and he got tired, so he laid down on Johnson's bed in the upstairs bedroom and fell sound asleep. He claimed he woke up when he heard a loud boom and saw Johnson in the room. He said Johnson told him there was a man downstairs, and she started arguing with [petitioner]. He claimed Johnson pulled a knife on him. He claimed Johnson swung the knife and caught his finger, inflicting a wound that looked suspiciously like a paper cut. The two struggled and he was able to get the knife away from Johnson. Even though Johnson was unarmed at that point, [petitioner]started stabbing her. After the first four stabs, he claimed not to remember anything until he was outside on the driveway. The physical evidence proved that he went out the second-floor bedroom window after he finished stabbing Johnson 102 more times. He claimed he heard his son crying and went in and got him. He then fled to the house in Kansas City where he was arrested after trying to destroy the clothes that had incriminating evidence of Johnson's blood and after having hid the shoes that had Johnson's blood on them.

The undisputed physical evidence combined with the jury's clear belief that: (1) [petitioner] had hidden his car from Johnson's plain view; (2) he had surreptitiously entered Johnson's house through the kitchen window; (3) he had hidden in Johnson's bedroom until Johnson entered the room; (4) he had locked Johnson's bedroom door so that he could complete the murderous task at hand without interruption; (5) he had stabbed Johnson not once or twice or ten times, but 106 times while declaring, "Man, I told you!"; (6) he had fled the bedroom through the bedroom window, picked up his infant son and delivered him to his mother's house, and then he had the wherewithal to immediately begin attempting to destroy and hide incriminating evidence; and (7) he then lied to law enforcement about being anywhere near Johnson or Johnson's house at the time of the murder (the post-murder actions demonstrating a consciousness of guilt).

Based upon this overwhelming evidence, we agree with the motion court's conclusion that, irrespective of [petitioner]'s claims of his trial counsel's

13

> ineffectiveness, there is no reasonable probability that the jury would have arrived at a different verdict. Thus, [petitioner]'s claim fails the prejudice prong, and his post-conviction relief claim of ineffective assistance of counsel must fail.

Resp. Ex. I, pp. 2-7.

The decision of the Missouri Court of Appeals, Western District, is reasonable and therefore is entitled to deference under § 2254(d). Trial counsel's decision not to make particular objections and not to present specific evidence can be considered a matter of strategy. In *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987), the United States Court of Appeals for the Eighth Circuit stated that "the courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his best judgment as to the attitudes and sympathies of judge and jury." *See also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful); *Henderson v. Norris*, 118 F.3d 1283, 1287-88 (8th Cir. 1997) (matters of trial strategy presumed correct), *cert*. *denied*, 522 U.S. 1129 (1998).

Because the state courts' determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 4 will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling

14

on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

                                             /s/ Ortrie D. Smith
                                             ORTRIE D. SMITH
                                             UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: April 23, 2015.